UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 05-0172 (RCL) |
| | : | |
| DERRICK GREENE, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's motion to suppress evidence. As grounds for this opposition, the United States relies on the following points and authorities as such other points and authorities as may be cited at a motions hearing.

I.   FACTUAL BACKGROUND

The defendant is currently charged with Unlawful Possession of a Firearm by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year. These charges arose out of the defendant's possession of a .357 Smith and Wesson revolver on March 25, 2005. On that date, at approximately 5:58 p.m., members of the Metropolitan Police Department's Third District's Vice Unit were on patrol in the south alley of the xxxx xxxxx xx xxxxxxx xxxxxx conducting a stop, when a silver colored Lincoln with mirrored tint and District of Columbia Tag number "CD 3494" entered the alley,[1] then quickly backed out of the alley and quickly drove off.[2]

---

[1]   It is illegal in the District of Columbia to have tinted front windshields or front side windows that allow less than 70% light transmittance or rear windshields or rear side windows that allow less than 50% light transmittance. See D.C. Code § 50-2207.02. Based on their observation of the "mirrored" tinted windows, Officers Harris and Petz believed that the tint law was being

The officers observed the xxxxxxx xxxxx xxxx xx xxxxxxx xxxxxx; therefore, the officers pursued the vehicle and eventually stopped it in the xxxx xxxxx xx xxxxxxx xxxxxx for the illegal tint on the windows of the vehicle.

Upon stopping the vehicle, Officer Adrian Harris informed the driver, defendant Derrick Greene, the reason for the traffic stop. While speaking to the driver, Officer Harris smelled an odor consistent with that of an alcoholic beverage emanating from the inside of the vehicle. Defendant Greene and his two passengers, Charles Jenkins and Kanetris Butterworth, were then asked to get out of the vehicle for officer safety and to enable the officers to conduct the window tint test to confirm their belief that the tint was darker than the law permitted.[3] As defendant Greene was exiting the vehicle, he dropped his lit cigar on the floorboard of the vehicle. Officer Harris then reached down to retrieve the lit cigar and noticed that the odor of alcohol got even stronger when he bent down to grab the lit cigar. Officer Harris then focused on a red plastic cup that was on a cup holder which contained an amber-brown colored liquid that looked and smelled like liquor.[4] Officer Harris then asked defendant Greene about the ownership of the liquor in the cup. Defendant

---

violated because "mirrored" tint is so dark that when one look s at it, one can only see his or her reflection and are unable to see the occupants of the vehicle.

[2] The MPD officers were on high intensity patrol in that area due to recent crimes of violence in the area, including a shooting of a nine-year old child.

[3] The officers removed the occupants from the vehicle when they conduct ed the tint test because of the fear that if the occupants remained in the vehicle that had dark mirrored tint, then the officers wouldn't be able to see if the occupants had a gun pointed at them.

[4] Officer Harris noticed the cup when defendant Harris initially rolled down the vehicle's window, but had not focused in on it.

Greene replied that the liquor belonged to him.  As a result, defendant Greene was placed under arrest for possession of an open container of alcohol.

After defendant Greene was placed under arrest, the officers conducted a search incident to arrest of the interior passenger compartment of the vehicle.  During the search, the police found, in plain view, a loaded .357 Smith & Wesson wedged between the driver's seat and the center console.  Consequently, the police officers arrested the other two passengers too, and decided to charge all three individuals with carrying a pistol without a license.  Further, defendant Greene was issued a notice of infraction because the tint test confirmed that his window tint was indeed darker than permitted by the law.

## II.   ARGUMENT

Defendant Greene, through counsel, now argues that stop, search and seizure violated the Fourth Amendment "because the alleged tint violation could be confirmed or ruled out from outside the vehicle without ordering" the occupants to exit the vehicle. (Defendant's Motion at 4).  Therefore, all evidence must be suppressed.  In light of the foregoing facts, it is clear that the defendant's motion is facially deficient.  Specifically, the defendant failed to allege facts in his motion which, if proven at a hearing, would demonstrate that his Fourth Amendment rights were violated by the seizure of the gun from his vehicle after he was arrested for possession of an open container of alcohol.  Consequently, the defendant's motion to suppress evidence should be summarily denied. See Rawlings v. Kentucky, 448 U.S. 98 (1980).

### A.   The Officers Had Probable Cause to Make a Traffic Stop

Notwithstanding the defendant's facially deficient motion, the recovery of the handgun and ammunition, from inside his vehicle did not violate the defendant's Fourth Amendment

3

rights."  As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  Whren v. United States, 517 U.S. 806 (1996).  "The Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one." United States v. Mitchell, 951 F.2d 1291, 1295 (D.C. Cir. 1991), cert. denied, 112 S. Ct. 1976 (1992); Delaware v. Prouse, 440 U.S. 648, 659 (1979) ("The foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed violations. Vehicle stops for traffic violations occur countless times each day; and on those occasions licenses and registration papers are subject to inspection . . . ."); United States v. Montgomery, 561 F.2d 875, 879 (D.C. Cir. 1977) ("The police may stop and question the driver of a vehicle when an infraction of the motor vehicle code is seen or suspected.").  Thus,  Officers Harris and Petz's actions in making a traffic stop are viewed objectively by considering their conduct  "in light of the facts and circumstances confronting [them] at the time." Scott v. United States, 436 U.S. 128, 136 (1978).   Moreover, the Supreme Court has made clear that the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred, regardless of the subjective motivations of the officer. Whren v. United States, 517 U.S. 806 (1996); see also United States v. Bookhardt, 349 U.S. App. D.C. 78, , 277 F.3d 558, 566 (2002) ("[a]s long as [police officer] had an objectively valid ground upon which to arrest, the fact that he articulated an invalid one does not render the arrest unlawful").  Because there was probable cause to stop defendant Greene for possible window tint violation, it's irrelevant whether the officers may have been motivated to stop defendant for some other reason.

Additionally, "a police officer who smells the identifiable aroma of a contraband drug emanating from a car has probable cause to believe that the car contains a quantity of that drug". United States v. Minnick, 607 A.2d 519, 525 (D.C. 1992). Consequently, upon smelling the odor of alcohol, Officer Harris had probable cause to arrest defendant Greene.

Even assuming that the officers lacked probable cause to make the traffic stop based on the mirrored tint on the defendant's vehicle, they certainly had a reasonable articulable suspicion that the mirrored tint violated the law in the District of Columbia. Terry v. Ohio, 392 U.S. 1 (1968) permits police officers to temporarily "seize" a person under certain circumstances, namely in brief encounters between a citizen and the police on public streets, which require swift action because of observations the officer has made. Id. at 20. The officer may briefly "seize," or detain the citizen if he has a reasonable, articulable suspicion that "criminal activity may be afoot." Id. at 30. The officer need not be certain that the citizen is engaged in criminal activity. Reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Thus, a Terry stop may be conducted simply "on the need to 'check out' a reasonable suspicion." United States v. Clark, 24 F.3d 299, 303 (D.C. Cir. 1994).

Because such a stop may occur on a reasonable suspicion, whether such suspicion existed in a particular situation is determined by the totality of the circumstances. Courts may not scrutinize each possible factor upon which the officer relied on in a separate and distinct manner. United States v. Sokolow, 490 U.S. 1, 8-9 (1989). "An officer on the beat does not encounter discrete, hermetically sealed facts," and for that reason while "a single factor might not itself be sufficiently probative of wrongdoing to give rise to a reasonable suspicion, the combination of

several factors – especially when viewed through the eyes of an experienced officer – may." United States v. Edmonds, 240 F.3d 55, 59-60 (D.C. Cir. 2001).

In the instant case, Officer Harris certainly had reasonable articulable suspicion to conduct a Terry stop of the vehicle because the mirrored tint prevented the police officers from being able to see the occupants who were inside the vehicle. Thus, it was appropriate for the police officers to conduct a traffic stop to further investigate the traffic violation. There was nothing improper or illegal about the stop.

B. The Officers Properly Ordered the Occupants Out of the Vehicle

Once Officers Harris and Petz stopped the defendant's vehicle, it was proper to order all three occupants out of the vehicle for police officer safety, and to enable the officers to conduct their tint test without fear of being injured by the vehicle's occupants. In Pennsylvania v. Mimms, 434 U.S. 106 (1977) (per curiam), the Court held that it was "reasonable and thus permissible under the Fourth Amendment" during every traffic stop for police to order the motorist to get out of his vehicle so he might be fully observed. Id. at 109-111 (emphasis added). The Mimms court's inquiry focused on the "incremental intrusion resulting from the request to get out of the car once the vehicle was lawfully stopped." Mimms, 434 U.S. at 109. Recognizing that the touchstone of its analysis was the reasonableness of the police action, the Court balanced the public interest against "'the individual's right to personal security free from arbitrary interference by law officers.'" Id. (citations omitted). It was "too plain for argument that the State's proffered justification - the safety of the officer - is both legitimate and weighty." Id. at 110. Indeed, "'a significant percentage of murders of police officers occurs when the officers are making traffic stops.'" Id. (quoting United States v. Robinson, 414 U.S. 218, 234 n.5 (1973)). In

Maryland v. Wilson, 519 U.S. 408 (1997), the Court extended that holding to permit police to order passengers as well as the driver to get out of the vehicle. Neither Mimms nor Wilson required that the officer have an objective, particularized safety concern. Mimms, 434 U.S. at 109; Wilson, 519 U.S. at 412. The Court found it "too plain for argument that the * * * proffered justification -- the safety of the officer -- is both legitimate and weighty." Mimms, 434 U.S. at 110. The Court balanced against that generalized concern for officer safety "the intrusion into the driver's personal liberty occasioned * * * by the order to get out of the car." Id. at 111. Although requiring the motorist or passenger to get out of the vehicle intensifies the degree of seizure involved, and exposes the driver or passenger to a greater degree of visual inspection, the Court judged that "this additional intrusion can only be described as *de minimis*." Id.; see also United States v. Stanfield, 109 F.3d 976, 981-983 (4th Cir.) (because of inherent dangers of traffic stops, an officer can routinely open vehicle door and visually determine whether occupants are armed when vehicle has darkly tinted windows), cert. denied, 522 U.S. 857 (1997); United States v. Packer, 15 F.3d 654, 657 n.2 (7th Cir. 1994) (during nighttime stop, an officer may require motorists to keep hands in view and may shine light through vehicle). Thus, reasonable safety concerns justified the officers in asking the occupants of defendant's vehicle to step out of the vehicle while they performed the tint test. Accordingly, the stop that occurred in this case, following a request that the occupants exit the vehicle was lawful.

    C. The Handgun Was Properly Seized During A Search Incident To A Lawful Arrest.

    Once defendant Greene was arrested for possession of an open container of alcohol, he could be properly searched incident to that arrest. See Chimel v. California, 395 U.S. 752 (1969) (a lawful custodial arrest justifies the contemporaneous warrantless search of the arrestee and the area within

his immediate control). Any objects the police find during a search incident to arrest, which they have probable cause to believe are fruits, instrumentalities or evidence of a crime, can be seized. United States v. Robinson, 414 U.S. 218 (1973); see New York v. Belton, 453 U.S. 454, 460 (1981) ("when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile ... [and] examine the contents of any [open or closed] containers found within the passenger compartment" because they are within reach of the arrestee); United States v. Harris, 617 A.2d 189 (D.C. 1992) (search of vehicle, occurring shortly after driver or occupant has been placed under arrest and restrained, was contemporaneous with the arrest and was a valid search incident to arrest).

### III.    CONCLUSION

WHEREFORE, for all of the forgoing reasons, the United States respectfully submits that defendant's motion to suppress evidence should be denied.

> Respectfully Submitted,
>
> KENNETH L. WAINSTEIN
> United States Attorney
>
> _____
> Lionel André
> Assistant United States Attorney
> D.C. Bar Number 422534
> Narcotics Section
> 555 4th Street, N.W. – Room 4846
> Washington, D.C. 20001
> (202) 353-2481